[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action for dissolution of marriage was tried over a period of two days. Both parties were represented. They presented evidence on financial issues including child support, health insurance, alimony, life insurance, division of assets and liabilities, and counsel fees. Only the parties testified. Several exhibits were entered into evidence. The court has considered all of the statutory criteria for the orders to be issued. The statutory criteria will not be restated here. The court makes the following findings of facts and issues the following orders.
The parties were married on May 19, 1984 in Honolulu, Hawaii. The following minor child was born to the wife who is issue of the marriage: Vanessa Marie Korns, born April 25, 1990. The court has jurisdiction over the marriage, both of the parties having lived in the State of Connecticut for more than one year prior to the bringing of this action. The parties have not been recipients of public assistance during the period of the marriage.
The plaintiff wife is 46 years old. She is in good health although she still suffers from the affects of an auto accident in 1992, primarily in the form of headaches. She has a B.A. degree and a masters degree in public health. She worked in this field until she and the defendant moved to Connecticut in 1990, about the time that Vanessa was born. She stayed home and took care of Vanessa for the next six years. Then she slowly began to build a landscaping and gardening business. The business is now operated as a limited liability company known as Pampered Perennial Borders, LLC. The plaintiff is the sole owner. The business has increased its gross and net income each year of its existence. In 2000, the business had gross sales of $324,923 and the plaintiff had net income from the business of $80,160.
The defendant husband is 49 years old. He is in good health. He holds a bachelor's degree, a medical degree, and a masters degree in public health. He has no experience in clinical medicine; his experience is in the business side of medicine as an administrator in health maintenance organizations. He and the plaintiff moved to Connecticut in 1990 so that he could begin a job as a health administrator with Aetna Life Insurance Company. His earnings at Aetna steadily increased until his employment CT Page 14225 was terminated in October of 1996. His average yearly income over his last 5 years at Aetna was $165,469.42. The defendant took a job as an administrator with Private Health Care Systems in Watham, Massachusetts in February 1997. This job ended in June 1997. He was unemployed until April 2000 when he took a temporary job as a fund-raiser at a salary of $2,200 per month for two months. In September 2001 he took a job as a contract negotiator for Oak Leaf Waste Management at a base salary of $42,500 with an opportunity for commissions and bonuses which are expected to boost his total compensation into the range of $100,000 per year.
The plaintiff testified that the marriage had broken down irretrievably without hope of reconciliation. She traced the problems to the defendant's long period of unemployment and the financial problems that ensued. The defendant is opposed to divorce on religious grounds does not want to have his marriage dissolved.
The financial problems created by the defendant's unemployment were severe. In 1997 after the defendant lost his job with Private Health Care Systems he began receiving severance pay while he was still receiving severance pay from Aetna. The result was that the defendant's earnings for 1997 topped $300,000. The parties failed to save sufficient funds to pay the taxes which came due in 1998. They failed to moderate their spending habits. As a result, they did not have any cash reserves when the defendant was unable to find employment in his field. So, they started using funds from the defendant's 401k to pay their living expenses. The defendant withdrew $75,000 from his Aetna 401k in 1998 and another $54,885.50 in 1999 at which point it was exhausted. The defendant had no other sources of income. In order to raise more money the defendant sold land which he had purchased in Oregon for retirement. The defendant even borrowed $900 from Vanessa's savings account to pay bills. Fortunately the plaintiff's business was growing and producing enough income to pay some of the bills. Other expenses were charged to credit cards, The defendant admits that he was a bad manager of the family funds. He also bears responsibility for allowing his pride to keep him from accepting employment outside of his field. Inexplicably, the defendant even failed to apply for unemployment insurance benefits although undoubtedly he would have qualified. The plaintiff is to be commended for initiative in building her business and helping to "keep the wolf from the door." But the parties were continuing to live beyond their means and the plaintiff participated.
The strain of these years of financial turmoil caused differences to arise between the parties which brought the plaintiff to commence this action in October 2000. The parties have been living separately since July 2001 when the defendant reluctantly vacated the marital home with a CT Page 14226 loan from the plaintiff of $1,200 for two months rent. The plaintiff remains in the marital home with the minor child Vanessa. The defendant is presently living in a motel in Cromwell. The parties agree that they should have joint legal custody of Vanessa. The defendant does not have a suitable place to bring his daughter for overnight parenting. The parties have been cooperatively working to allow the defendant to have parenting time with Vanessa during the day.
The court finds that the marriage has broken down irretrievably without prospect of reconciliation. The causes of the breakdown are undoubtedly related to the financial stresses arising from the defendant's unemployment. This unemployment was excessive and unnecessary in light of the defendant's education and experience. The defendant must bear responsibility for his failure to swallow his pride and accept employment out of his field or, at a minimum, to apply for unemployment insurance. The result of this failure is that major assets of the marriage have been dissipated.
The marital home at 73 Shagbark Road in Glastonbury is worth $250,000 and is encumbered with a mortgage for $190,000. The home was purchased by the parties in 1990 using the proceeds from the sale of a previous home and from a signing bonus the defendant received when he took the job at Aetna.
The plaintiff's business is healthy and growing. It was begun during the marriage with a loan of $20,000 from the defendant which has since been paid back. Although the defendant was on the books as an employee in order to obtain medical insurance, he never participated in the company. However, he did stay home and take care of the minor child in order to enable the plaintiff to go to work. There was no evidence offered upon which the court could arrive at a monetary value of the business aside from the $10,000 which is in the business checking account.
The plaintiff has a personal checking balance of $3,000. She has CompuWare stock worth approximately $17,600 and Oppenheimer mutual funds worth approximately $15,000. There was no evidence of when these were acquired or the source of the funds used in the purchases.
The defendant has a personal checking balance of $837. He is the owner of two Connecticut State College Bonds with a value at maturity of $1,000 each. These bonds were purchased for Vanessa's college education.
The plaintiff contributes to a SEP through her business which has a present value of $15,000. She also has an IRA with a present value of $8,000. The defendant has a pension plan through his former employment at Aetna which will begin paying him a life-time fixed benefit of $1,250 per CT Page 14227 month on June 1, 2017. There was no evidence of the present value of this future benefit.
The defendant has credit card debt as follows: $19,500 on a First USA card in his name; $12,500 on a First USA card in joint names but which had a zero balance when the parties separated and which the plaintiff thought had been canceled; $3,400 on a closed American Express card in the defendant's name alone. The plaintiff has no credit card debt in her name.
Neither party has life insurance, There was no evidence that either party is insurable or that life insurance would be affordable to either party.
The court issues the following orders:
1. A dissolution of the marriage.
2. The parties shall have joint legal custody of the minor child, Vanessa. Vanessa shall reside with the plaintiff mother. The defendant father shall have reasonable and liberal parenting time with Vanessa. The defendant is ordered to complete the Parenting Education Program within 60 days.
3. The defendant shall pay to the plaintiff child support in the amount of $224 per week. Neither party supplied a reliable financial affidavit. Only the plaintiff supplied a Guidelines worksheet, and that was not filled out properly. The court has calculated child support by using the defendant's expected earnings of $100,000 per year and the plaintiff's expected earnings of $80,000 per year. This results in presumptive support of $224 per week. No deviations are warranted. Child support shall be paid by immediate wage withholding. Child support shall not be retroactive. The parties did not separate until July 2001 and the plaintiff did not file for temporary child support after that date. Child support shall be payable until the minor child attains the age of 18 years, but if still in high school, support shall continue through high school graduation but not beyond the age of 19 years. The parties are ordered to give notice to each other of any changes in their employment, their hours worked, rate of pay, and place of employment.
4. The plaintiff shall continue to maintain medical and dental insurance on behalf of the minor child through her LLC. The parties shall share unreimbursed medical, dental, orthodontic, counseling and prescription expenses with the defendant paying 49% and the plaintiff paying 51%. CT Page 14228
The defendant shall pay to the plaintiff periodic alimony in the amount of $100 per week until the death of either party, the remarriage of the plaintiff, or 10 years from the date of this judgment, whichever shall sooner occur. Alimony shall be nonmodifiable as to term only.
6. Within 30 days the defendant is ordered to convey all his right, title and interest in the marital home to the plaintiff by quit claim deed. Thereafter, plaintiff shall have exclusive possession of the marital home and shall be responsible for payment of all mortgages, liens, taxes, insurance, and expenses associated with the property and shall indemnify and hold the defendant harmless from any further responsibility for these expenses. The plaintiff shall pay to the defendant the sum of $30,000 on the earlier event of the plaintiff's remarriage, her death, the sale of the marital home, or April 25, 2008. The plaintiff shall execute a promissory note for this indebtedness which shall be secured by a second mortgage on the marital home. The promissory note shall bear interest at the rate of 6% and shall contain customary language for the payment of attorney fees and costs of the event of collection. There shall be no prepayment penalty.
7. The plaintiff shall retain her ownership of Pampered Perennial Borders, LLC free and clear of any claims of the defendant.
8. Within 30 days the defendant shall transfer to the plaintiff any interest he may have in the 1997 Ford F250. Within 30 days the plaintiff shall transfer to the defendant any interest she may have in the 1986 BMW. The parties shall own these vehicles free and clear of any claims of the other party.
9. The plaintiff shall retain her SEP through Pampered Perennial Borders, LLC and her IRA free and clear of any claims of the defendant. The defendant shall retain his Aetna pension free and clear of any claims of the plaintiff.
10. The parties shall retain their respective bank accounts free and clear of any claims of the other party.
11. The defendant shall continue to hold the two Connecticut College Bonds for the benefit of the minor child, Vanessa.
12. The plaintiff shall pay and be solely responsible for the debts shown on her financial affidavit. The defendant shall pay and be solely responsible for the debts shown on his financial affidavit including the two First USA obligations and the American Express debt. The parties shall indemnify and hold the other party harmless from liability for the debts which they have been ordered to pay. CT Page 14229
13. Within 60 days the defendant shall repay to the plaintiff the $1,200 advanced to him by the plaintiff at the time the defendant vacated the marital home.
14. Provided that they have the right under federal law, the parties shall alternate the right to claim Vanessa as a dependency exemption with the plaintiff being entitled to the exemption for 2001. The defendant shall be entitled to claim the exemption only if he is current in his child support at the end of the year for which the exemption is claimed.
15. Within 30 days the parties shall meet to attempt to agree on a division of their personal property located in the marital home and the timing of the removal of the defendant's share. If they are unable to reach agreement, they are referred to Family Relations for investigation, conciliation, and report before any motions are filed in court.
Pickard, J.